BERT THAYER, RESPONDENT, v. W. M. PALEN, ADMINISTRATOR OF ESTATE OF SARAH E. WATSON, APPELLANT.

In the Springfield Court of Appeals. January 15, 1931.

*Everett Frieze, J. M. Leavitt* and *A. L. Burns* for appellant.

*Frank S. Sea* and *T. H. Douglas* for respondent.

· SMITH, J.—This cause of action originated in the Probate Court of Polk county, by the plaintiff, Bert Thayer, filing a claim in two counts against the administrator of the estate of Sarah E. Watson, deceased. Each count of the claim related to the same matter and each had the same purpose, to-wit, to recover against the estate for services rendered the deceased, in her lifetime. Trial to a jury in the probate court resulted in a verdict and judgment in favor of plaintiff in the sum of $1500 on the first count of his claim. From this adverse judgment the administrator perfected an appeal to the circuit court of Polk county where on trial *de novo*, had on the 10th day of December, 1929, the jury returned a verdict in favor of respondent in the sum of $5,023.84, the amount asked in the claim and on this verdict judgment was duly rendered. Appellant filed his motion for new trial and on being overruled, the case is here on appeal.

The facts, as developed by the evidence, fairly show the following: Sarah E. Watson, with her husband, W. H. Watson (commonly known as "Huse" Watson). lived for many years on a farm about four miles north of Bolivar, Polk county, Missouri. They were childless. Sarah E. Watson died testate at her home on the 18th day of November, 1928, at the advanced age of eighty-three years. The cause of her death was blood poison. Her husband, Huse Watson, died of the same malady a few days later, aged eighty-four years. The plain-

tiff in this cause came to the Watson home when he was about seven or eight years of age. He was not related to either Mrs. Watson or her husband, and there is no claim of adoption. He lived with Mr. and Mrs. Watson until he reached the age of twenty-one or twenty-two when he married and moved to California. A few years after that Mrs. Thayer died and respondent continued for a while to reside in the State of California.

The evidence in this case shows that sometime after the death of Mrs. Thayer that Sarah E. Watson was desirous of having the plaintiff return from the State of California to her home in Polk county. Under the evidence this was about the year 1899.

Mr. and Mrs. Watson always kept their property separate and each managed his or her property without interference from the other. She was a woman of considerable means.

Mrs. Watson, about the year 1899, went to a neighbor, Art Mosbarger, and asked him to write a letter for her to the plaintiff, who was then in the State of California, and tell him that if he would come back to Polk county and stay with her the rest of her life and help her and take care of her when she got old, that she would give him all of her property at her death. Mosbarger, who was a witness, testified that he declined to write the letter for her, and that Mrs. Watson said, "If you don't write it, I will." Several years after this Mrs. Watson told Mrs. Mosbarger, the wife of Art Mosbarger, and Albert Coleman that she had written the plaintiff that if he would come back from California and stay with her that she would give him everything she had. It is undisputed that shortly after the conversation had between Mrs. Watson and Art Mosbarger that the plaintiff did come to Missouri from the State of California, to the home of Mrs. Watson, and stayed there the rest of her life.

The record in this case abounds with testimony as to the labor and services that the plaintiff performed and rendered Mrs. Watson during the years from 1899 to November, 1928, the date of her death. As to services rendered Mrs. Watson, various witnesses testified that he helped cook, wash the dishes, helped keep house, brought in the water and the wood, built fires and generally waited on Mrs. Watson from then until her death. During this same period of time it seems that he helped the husband Huse Watson, some with his farm work, for which Mr. Watson paid him.

From 1899 up until the time of her death, Sarah E. Watson told numerous witnesses that she intended for the plaintiff to have all of her property at her death, because he stayed with her, had been good to her, and helped her, and that she could not have stayed on the farm if it had not been for him and because he had earned it.

The evidence shows that Mrs. Watson was a large, heavy woman, and it was hard for her to get around, and during the last eight or

ten years of her life, was quite feeble and that her husband disliked to hire help for her.

It appears from the record that both Mr. and Mrs. Watson were penurious, and as one or two witnesses expressed it, "would fight over a dime." The record further shows that the plaintiff did stay with Mrs. Watson from the time he came back from California, then a man about twenty-seven or twenty-eight years of age, until her death, waited on her in her last illness, and became infected with the same disease that she had, blood poison. Sarah E. Watson died testate, leaving her property to collateral heirs.

The plaintiff contends that he came back from California under a contract with Mrs. Watson that she would give him everything she had at her death if he would come back and stay with her until her death and help her with her work. The claim under the *quantum meruit* count covers the same services. There is no complaint made here as to the pleadings in the case nor as to the competency of the evidence. The defendant in his brief says, "The position of the appellant is that the evidence of the respondent if true does not show facts sufficient to constitute a contract and at most the evidence shows only that the respondent returned to the Watson home from California to resume his former position as a member of the Watson family and that the help rendered Mrs. Watson by the respondent was under the family relationship and mutual and in return for services rendered the respondent and that no contractual relations existed upon which to base a *quantum meruit* count, and at most the respondent has only shown that Mrs. Watson made statements both before and after the respondent returned from California that she intended to give the respondent everything that she had at her death."

The defendant expressed the reasons for reversal of this case in the following assignments of error:

"1. That the verdict is against the evidence, against the weight of the evidence and for the wrong party.

"2. That the court erred in overruling the appellant's demurrer (Appellant's instruction No. 1 to the respondent's evidence at the close of the claimant's case).

"3. That the court erred in refusing instructions numbers 1, 6, 7, 8, 10, and 11 offered by the appellant and in striking out the word "Expressed" before the word "Agreement," in the appellants instruction No. 4.

"4. That the verdict assessed by the jury is excessive.

"5. That the appellant's motion for new trial should have been sustained."

The record before us shows that the defendant at the close of the plaintiff's evidence offered an instruction in the nature of a demurrer

to the evidence on each of the counts in plaintiff's petition. The court refused to so instruct the jury. The defendant then introduced his evidence contradicting that offered by plaintiff, and at the close of all the evidence joined with the plaintiff in submitting the issues to the jury under other instructions.

We have examined the testimony carefully and think there were sufficient facts and circumstances shown by the evidence to warrant the submission of the case to the jury and that no error was made in refusing the peremptory instruction, for on demurrer to evidence, plaintiff is entitled to the benefit of every inference of fact which may be reasonably drawn therefrom. [Clark v. Atchison & Eastern Bridge Co., 24 S. W. (2d) 143.] And where the defendant offered a demurrer to plaintiff's evidence as in this case, and did not stand upon it when it was overruled, but went on and put on his own evidence the case must be viewed as a whole. [Riggs v. Metropolitan Street Railway Co., 216 Mo. 304, 115 S. W. 969.]

We think there was sufficient competent evidence offered to justify the court in submitting the issues to the jury, and since that is our conclusion, and the jury has passed upon those issues it is not for this court to interfere with the jury's findings based upon controverted testimony.

We have examined instructions numbered 6, 7, 8, 9, 10, and 11 requested by the defendant and refused by the court. These instructions are lengthy and we think it not necessary to set them out in full here, but we think no error was committed in their being refused, because the instructions given by the court covered the same issues as set out therein, and it was not necessary or proper for the trial court to give duplicate instructions, or instructions submitting the same issues under different verbiage for such a practice would likely have proved confusing rather than enlightening to the jury.

The defendant contends that the court erred in modifying his requested instruction No. 4. This instruction as given is as follows: "The court instructs the jury that statements made by the deceased, if any, indicating an intention to bestow a bounty on the plaintiff or to make him the recipient of her property or a part of it at her death, that such statements taken alone are not sufficient to warrant you in returning a verdict for the plaintiff, unless you further find and believe from the evidence in this case that there was an agreement or understanding between the plaintiff and the deceased, Sarah Watson, that Sarah Watson was to pay the plaintiff upon her decease for the services, if any, rendered by the plaintiff to the deceased in helping her cook, wash, clean house, making garden, attending to the cows, milk, and chickens and personally attending on her."

The modification complained of is the striking out the word "expressed" before the word "agreement." As requested the in-

struction at this point read "that there was an *expressed* agreement or understanding, etc."

We think it was not reversible error to strike out the word "expressed" in this instruction. The defendant had requested and the court had given an instruction numbered 2 telling the jury "that under the evidence in this case, the relationship known as the family relationship existed between plaintiff and the deceased Sarah Watson and that under such relationship, the burden of proof in this case rests upon the plaintiff to establish that an agreement existed between plaintiff and the deceased, Sarah Watson, etc.," and in instruction numbered 3 requested by defendant and given by the court the jury was told that even though it found that the deceased had made statements that she intended the plaintiff to have her property on her death, and even though the plaintiff expected to receive the same at her death, yet it should find the issues for the defendant unless the jury "further find the facts to be that there was an expressed or implied agreement or understanding between the plaintiff and the deceased, etc."

In defendant's instruction No. 2 he refers to "an agreement" between these parties, and in instruction No. 3 he refers to "an expressed or implied agreement" between them, and in his requested instruction No. 4, he attempts to limit the jury in its consideration to an "expressed agreement." The trial court struck out the word "expressed" and by so doing made this instruction in keeping with the two instructions that had been given at the request of the defendant, and in so doing we think no error was committed.

The defendant claims the verdict is excessive. This suit was filed in two counts; one that the defendant was to have all of the plaintiff's property if he would live with her and work for her until her death; the other was that of *quantum meruit*, and that his services were worth the amount that he sued for, and for which he obtained judgment. The verdict didn't say on which count the jury found and no point is made on any failure to elect. If there were a contract that the defendant was to receive all her property, then it goes that the verdict was not excessive, for the verdict was the exact amount of her estate as shown by the inventory. If the jury found for the plaintiff on the *quantum meruit* count, we think upon the facts that for the twenty-eight years the plaintiff worked for the deceased, helping her to cook, wash dishes, keeping house, doing the chores about the place, and waiting on her in her declining years, that this court cannot say that he was paid an excess amount for such services. If he collected all of said judgment he will have received $179.70 per year, or $3.26 per week. Witnesses who were neighbors and were frequently about the home and who saw the plaintiff performing the work testified that the services were worth $5 per week and while

there was some testimony that the deceased paid him some, and that he worked for Huse Watson, for which he received pay, yet these questions were submitted to the jury and the trial court, who had an opportunity to see and know the witnesses and their demeanor better than we can possibly know, and they have spoken in this verdict and judgment, and we would not feel justified in saying that the verdict is excessive.

It follows that the defendant's motion for new trial should not have been sustained.

The judgment is affirmed. *Cox, P. J.,* and *Bailey, J.,* concur.